E-FILED    CDDM018646 - 2025 NOV 02 11:54 AM    JOHNSON
CLERK OF DISTRICT COURT    Page 1 of 15

IN THE IOWA DISTRICT COURT IN AND FOR JOHNSON COUNTY

| | | |
|---|---|---|
| Upon the Petition of | ) | |
| | ) | |
| MICHAEL J. PRIER, | ) | Case No. CDDM018646 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| and Concerning | ) | RULING REGARDING APPLICATION |
| | ) | FOR RULE TO SHOW CAUSE |
| TRACIE D. VILLHAUER, | ) | |
| | ) | |
| Respondent. | ) | |

On September 3, 2025, the Court was set to hear the parties' competing Applications for Rule to Show Cause. Petitioner, Michael Prier (hereinafter "Michael"), appeared in person and was represented by his attorney, Joeseph Pavelich. Respondent, Tracie Villhauer (hereinafter "Tracie"), appeared in person and was represented by her attorney, Thomas Viner. At the parties' request, the matter had been set for a full day hearing, but at the beginning of the hearing Michael formally withdrew his request for contempt. A formal record was made, the parties were given an opportunity to submit written requests for relief, and the Court took the matter under advisement.

CONCLUSIONS OF LAW

The matter before the Court is a contempt proceeding brought within the setting of a dissolution of marriage case. As such, the proceeding is governed by Iowa Code Sections 598.23, 600B.37, and 665.2 (2025). Section 598.23 provides that "[i]f a person against whom a temporary order or final decree has been entered willfully disobeys the order or decree, the person may be cited and punished by the court for contempt." Iowa Code §598.23. Section 600B.37 provides that "[i]f a party fails to comply with or violates the terms or conditions of an order made pursuant to this chapter, the party shall be held in contempt and punished by the

1

E-FILED   CDDM018646 - 2025 NOV 02 11:54 AM   JOHNSON
CLERK OF DISTRICT COURT
Page 2 of 15

court in the same manner and to the same extent as is provided by law for a contempt of such

court in any other suit or proceeding cognizable by such court." Iowa Code § 600B.37. Similarly,

Section 665.2 defines contempt as, among other things, "[c]ontemptuous or insolent behavior

toward [the] court while engaged in the discharge of a judicial duty which may tend to impair the

respect due to its authority" and "[i]llegal resistance to any order or process made or issued by

[the court]". Iowa Code §665.2. A finding of contempt is punishable by thirty days in jail for

each offense. Iowa Code §598.23. As an alternative to this punishment, however, the Court is

empowered to enter an order withholding income under the terms and conditions of Iowa Code

Chapter 252D, modifying visitation to compensate for lost visitation time, establishing joint

custody for a child, transferring custody, directing the parties to provide contact with the child

through a neutral party or site, imposing sanctions or specific requirements, or requiring that the

parties participate in mediation to enforce the joint custody provisions of the decree. *Id.*

In Iowa, contempt actions are considered quasi-criminal matters even if they arise in the

context of a civil case. *Reis v. Iowa Dist. Ct*., 787 N.W.2d 61, 68 (Iowa 2010) (citing

*Zimmermann v. Iowa Dist. Ct*., 480 N.W.2d 70, 74 (Iowa 1992)). For this reason, contempt must

be established by proof beyond a reasonable doubt. Id. (citing *Ary v. Iowa Dist. Ct*., 735 N.W.2d

621, 624 (Iowa 2007)); *see also Ervin v. Iowa Dist. Ct*., 495 N.W.2d 742, 744–45 (Iowa 1993).

> A reasonable doubt is one that fairly and naturally arises from the evidence in the case, or
> from the lack or failure of evidence produced . . . . A reasonable doubt is a doubt based
> upon reason and common sense, and not the mere possibility of innocence. A reasonable
> doubt is the kind of doubt that would make a reasonable person hesitate to act. Proof
> beyond a reasonable doubt, therefore, must be proof of such a convincing character that a
> reasonable person would not hesitate to rely and act upon it.

Iowa Criminal Jury Instruction 100.10 (citing *State v. Frei*, 831 N.W.2d 70 (Iowa 2013), *State v.*

*McFarland*, 287 N.W.2d 162 (Iowa 1980), *State v. McGranahan*, 206 N.W.2d 88 (Iowa 1973)).

E-FILED    CDDM018646 - 2025 NOV 02 11:54 AM    JOHNSON
CLERK OF DISTRICT COURT
Page 3 of 15

The polestar in a contempt matter is always willfulness. Only when a party has demonstrated *willful* disobedience to a court order will s/he be held in contempt. *See, e.g., Reis*, 787 N.W.2d at 68; *Ary*, 735 N.W.2d at 624-25; *In re Inspection of Titan Tire*, 637 N.W.2d 115, 132 (Iowa 2001); *Christensen v. Iowa Dist. Ct*., 578 N.W.2d 675, 678 (Iowa 1998). Procedurally, the party alleging contempt has the burden to prove the contemnor (that is, the party alleged to be in contempt) (1) had a duty to obey a court order and (2) willfully failed to perform that duty. *Ary*, 735 N.W.2d at 624 (citing *Christensen*, 578 N.W.2d at 678). Once the party alleging contempt is able to show a violation of a court order, the burden shifts to the party alleged to be in contempt "to produce evidence suggesting the violation was not willful." *Id.* The party alleging contempt, however, always retains the burden of establishing willfulness beyond a reasonable doubt. *Id.* (citing *Ervin*, 495 N.W.2d at 745). In order to prove a party's failure to comply with a court order was willful, the complaining party must present evidence of "conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemnor had the right or not." *Reis*, 787 N.W.2d at 68 (quoting *Ary*, 735 N.W.2d at 624-25 (Iowa 2007)). Conversely, there are generally two ways in which the party accused of contempt may show that his or her failure to comply with a court order was not willful: (1) the order was indefinite; or (2) the contemnor was unable to comply with the order. *Christensen*, 578 N.W.2d at 678.

FINDINGS OF FACT AND ANALYSIS

<u>Background</u>

This case began in November of 2017, when Michael filed a Petition for Dissolution of the parties' marriage. The couple had been married just over six years, and they had two

3

E-FILED    CDDM018646 - 2025 NOV 02 11:54 AM    JOHNSON
CLERK OF DISTRICT COURT
Page 4 of 15

children, including H.D.P., who was born that same year. At the time, Michael requested the parties be granted joint legal custody and joint physical care of both children. The parties initially resolved their marriage through a Stipulation, filed and approved by the court on July 31, 2018. They agreed to joint legal custody and joint physical care of both of their children. The parties were litigating again that same year, with Michael seeking an injunction related to Tracie's involvement with a paramour of questionable character.

In August of 2019, Tracie filed a contempt application asserting Michael was not following their Stipulation and was letting their oldest child decide whether or not to come to visitations with Tracie. Michael responded with a Petition for Modification seeking primary physical care of both children. Tracie was unsuccessful in proving her contempt allegations, with the hearing judge finding Michael had not interfered with Tracie's visitation and had attempted to facilitate counseling between them. Of note, however, at this point in their history the parties had joint physical care of the children. While the modification was pending, Michael sought another injunction after H.D.P. showed up with an apparent cigarette burn on her foot. The incident was reported to the Department of Human Services, but the Court is not aware of any evidence in the record indicating there was a finding of abuse or lack of care against Tracie.

Tracie filed another contempt application in March of 2021, alleging Michael had been withholding visitation of both children, not allowing her to see H.D.P. since July of 2020. She also alleged Michael was not allowing phone calls or speaking to her about the children. Michael tried to have the hearing on that application delayed until the time of the modification trial, but that request was denied. He responded by filing his own contempt application, alleging Tracie hadn't complied with some financial obligations. After a hearing, the court found Michael was in contempt of court for failing to allow Tracie her previously ordered care time with H.D.P. and

E-FILED   CDDM018646 - 2025 NOV 02 11:54 AM   JOHNSON
CLERK OF DISTRICT COURT
Page 5 of 15

failing to allow for communication between Tracie and H.D.P. Of note, in a footnote contained within that ruling, the hearing judge indicated the evidence suggested that Michael entered into the prior stipulation knowing he very likely did not intend to follow it. Michael was sentenced to two days in jail with the sentence being purgeable if he followed the prior stipulation until the time of the modification trial. The parties, with their consent, were also ordered to mutually agree on a counselor to provide services to Tracie and their older child to repair their relationship.

Michael's Petition for Modification was set to be heard in July of 2021. On June 18th, however, the parties filed and the Court approved a Stipulation of Modification. They agreed that Michael would be awarded sole legal custody of their older child and primary physical care of both children. Tracie was granted visitation with H.D.P. every other weekend. The Stipulation also included provisions about where the exchanges would occur (the North Liberty Police Station), communication between the parties, and Zoom calls between Tracie and H.D.P.

In February of 2022, Tracie filed another contempt application. Once again, she alleged Michael was withholding H.D.P. from her visitation with Tracie. Moreover, she alleged he had started doing so in July of 2021—just one month from when the parties stipulated to a new visitation schedule. Michael again responded with his own contempt application, again alleging Tracie had not complied with her financial obligations. He also filed a second Petition for Modification, but it was related only to modifying Tracie's child support obligation. Hearing on the application was promptly set but later continued twice at the parties' request. They then, in June of 2022, resolved their contempt applications with a Stipulation that granted Tracie a make up visit.

E-FILED   CDDM018646 - 2025 NOV 02 11:54 AM   JOHNSON
CLERK OF DISTRICT COURT
Page 6 of 15

The next month, in July of 2022, Tracie amended her answer to file a counterclaim asking that the Court also modify the parties' custody, care, and visitation schedule. Trial was then set for December of 2023. In the interim, in October of 2022, Jeremy Hahn was appointed as guardian ad litem. The appointment was made over Michael's objection and after a contested hearing. Interestingly, part of Michael's resistance to the appointment of a guardian ad litem was that, given H.D.P.'s age, "her viewpoints and testimony are less likely to be as relevant to the court as would those of an older child."

On September 18, 2023, Tracie filed the contempt application that is currently before the Court. In it, Tracie alleged that Michael was again withholding H.D.P. from her and violating the provisions of their stipulation related to communication. She alleged her last visitation with H.D.P. was in December of 2022, not long after Jeremy Hahn was appointed (over Michael's objection). Michael asked that the hearing on it be continued. The request was denied but later granted after an amended request was filed. It was eventually set to be heard at the same time as the modification trial on December 13-14, 2023.

The undersigned was the judge assigned to that trial. On the first day, the parties convened, exhibits were admitted, and Michael began his testimony. Over the lunch break, the parties and their attorneys decided they wanted to spend some of the afternoon negotiating a resolution rather than continuing with testimony. They eventually reached an agreement that was read into the record by Mr. Hahn and led to a signed Stipulation of Modification that was filed on December 21, 2023. The Stipulation was approved by the Court on the same day. In that Stipulation, the parties continued to agree they would have joint legal custody of H.D.P. and Michael would have primary physical care. They also agreed that Jeremy Hahn would select a Marital and Family Therapist for the purpose of attempting to mend the relationship between

E-FILED   CDDM018646 - 2025 NOV 02 11:54 AM   JOHNSON
CLERK OF DISTRICT COURT
Page 7 of 15

Tracie and H.D.P. Pending those sessions starting, and with the parties acknowledging the expectation that they would begin by the end of January 2024, Tracie agreed her visitation would be suspended in the interim. Thereafter, the parties agreed to a graduated visitation schedule for Tracie, in which she would see H.D.P. every other weekend for increasingly longer periods, working up to every other weekend. The parties also addressed an increase in Tracie's child support obligation, a payment by Michael of some of her attorney fees, and Tracie's consent to the parties' older child being adopted by Michael's wife. Regarding the contempt, the parties essentially agreed to hold it in abeyance while the rest of the Stipulation played out. Tracie agreed to either dismiss it or request it be set back in for hearing within 90 days of the filing of the Stipulated Modification Decree.

Unfortunately, Mr. Hahn was unable to find a therapist willing to work with the parties until early May of 2024. With the 90-day deadline approaching and having received no visitation or counseling, on March 19th Tracie requested her contempt application again be set for hearing. It was promptly set in for hearing but continued on Michael's request. He then responded (again) by filing his own contempt application related to financial obligations. The dueling contempt applications were set to be heard on May 28, 2024. When the hearing date came around, there still had not been any counseling because (quite inexplicably) Michael's attorney took umbrage with the qualifications of the therapist Mr. Hahn had selected.

The parties appeared for the hearing and requested the matter be rescheduled so that an entire day of testimony could be taken on their dueling contempt applications. A trial setting conference was conducted with the attorneys, and the contempt hearing was continued until some 15-plus months later, to September 3, 2025. Since that time, Tracie and H.D.P. have not engaged in any counseling and Tracie has had no visitation with H.D.P.

E-FILED CDDM018646 - 2025 NOV 02 11:54 AM JOHNSON
CLERK OF DISTRICT COURT
Page 8 of 15

Tracie's Allegations

The allegations in Tracie's contempt application, now just shy of two years old, are that Michael had failed to allow Tracie visitation with H.D.P. and interfered with their communication. The relevant period is from December 17, 2022, until September 18, 2023. Despite this relatively limited period of time, both parties spent significant amounts of testimony discussing events occurring after the contempt application was filed and the parties reached their most recent stipulation in December of 2023. The conduct Tracie complains of certainly has continued throughout that time, but in the December Stipulation the parties also agreed to suspend Tracie's visitation pending the therapy starting. They further agreed that the unavailability of a therapist would not be attributed to Michael in terms of him willfully disregarding the order. Testimony of what has happened in the interim, however, can certainly be considered to the extent it helps establish whether Michael's prior conduct was willful.

Tracie's complaint is straightforward. She has not been able to exercise visitation with H.D.P. since December of 2022 and also has not been receiving the phone or Zoom calls to which she is entitled. There is no dispute that this is true. The evidence fully supports it. On Michael's watch, Tracie has continued to lack any real visitation or meaningful communication with H.D.P. That is what occurred during the contempt period and that is what has occurred since.

Michael counters that he has tried to facilitate Tracie's visitation and communication with H.D.P. but H.D.P. simply won't cooperate. The Court, however, is unconvinced it's that simple. He further supports this argument with testimony apparently designed to convince the Court that Michael and his wife are "model parents" and Tracie is a bad parent, but Michael misses the

E-FILED  CDDM018646 - 2025 NOV 02 11:54 AM   JOHNSON
CLERK OF DISTRICT COURT
Page 9 of 15

point. The Court will concede that, between them, Michael has been the "better" parent for some period of time. That is why he has primary physical care of H.D.P., but that is also not the issue.

Being model parents in the eyes of your kids' school or your friends does not make you a model parent in the eyes of the law. And the record demonstrates that Michael has substantially failed in one of the principal responsibilities of being a primary care parent—to foster the relationship between his daughter and her mother. He has all but thrown up his hands, at best going through the motions or paying lip service to the idea that H.D.P. must have a relationship with Tracie. The problem with Michael's argument, or assertion, that he can't do anything more to actually get H.D.P. to visit with Tracie or take her calls, is that *if* the Court were to accept it as true, and that's a big "if", that same evidence would support a finding that Michael has proven himself to be unfit for the role of primary care parent. (Not that the evidence demonstrates that Tracie would necessarily make a better primary care alternative.)

And it's not the Court's or even Tracie's responsibility to come up with some process, or scheme, to somehow get H.D.P. to comply with visits. It's Michael's responsibility. A responsibility he readily accepted when he took on the role of primary care parent. Children have been defying their parents since time immemorial. It's Michael's responsibility to find a way to bridge that gap. If Tracie then fails on her end, that's on her. For the last several years, however, it appears Tracie has been doing her part to try to maintain the relationship. (And the Court is not dissuaded by Michael's testimony that Tracie only calls every week when Court hearings are approaching. Frankly, given how H.D.P. is allowed by Michael to respond to those calls, the Court is surprised she has bothered to keep calling at all.)

Moreover, if the issue is that the parties' older son has been spoiling the well, so to speak, and convincing his sister their mother is a monster and all H.D.P. has to do is say "no" or hang

9

E-FILED   CDDM018646 - 2025 NOV 02 11:54 AM   JOHNSON
CLERK OF DISTRICT COURT
Page 10 of 15

up the phone and she won't have to see her, then that's also on Michael to get to the bottom of and deal with. And the Court has a very difficult time believing that, if H.D.P. treated his current wife with the same disrespect she shows Tracie, he would have simply thrown up his hands and said "what more can I do?"

Part of what is so frustrating to the Court about this case is that the parties had a way forward when they reached their Stipulation of Modification in December of 2023. They agreed to getting therapy in place, and Tracie even agreed to suspending visitation in the meantime. But then Michael reneged. It may have been because he got some questionable advice from a former lawyer or he may have been the driver of it, but the therapy never happened, and the record shows Michael did precious little to make sure it happened.

Michael says now that he believes counseling is crucial to moving forward, but he's done nothing to actually act on that belief in the intervening years. If he *really* believed that it was important for H.D.P. to have a good relationship with Tracie, he would have done something even without being ordered to do so. As he certainly must know that the longer he allows this to continue, the less likely it becomes that Tracie and H.D.P. will ever have any meaningful reunification. The Court's reading of the evidence before it is that Michael's endgame appears to be one of waiting it out, with the idea that Tracie will eventually give up, or see the writing on the wall, like it appears she did with their son. This is not an appropriate tack for Michael to take. Whatever happened between Tracie and their older son, and the Court has never seen any evidence of what actually happened, it is not applicable to H.D.P.

The Court is convinced, beyond a reasonable doubt, that the record establishes Michael is in contempt of court for failing to facilitate Tracie's visitation and communication with H.D.P., as required by the parties court-approved Stipulations. He must be punished accordingly, but

10

E-FILED   CDDM018646 - 2025 NOV 02 11:54 AM   JOHNSON
CLERK OF DISTRICT COURT
Page 11 of 15

more importantly he must change his contemptuous behavior. Tracie must start getting her visitation. Family therapy must begin. And the Decree of Modification filed December 21, 2023, *must* be followed.

<u>Punishment</u>

Michael is in contempt, so what is the appropriate remedy? "Aye, there's the rub." William Shakespeare, *Hamlet*, act 3, scene 1, line 10. In the Court's eyes, this has always been the biggest question of this case. In fact, the Court admits it has sat on this case for far too long, hoping a better solution would somehow reveal itself. Ordering payment of Tracie's attorney fees alone won't do it, as Michael has paid them before. A short jail sentence won't do it, as one has previously been ordered in this case for the same conduct. Make up visits alone won't do it, because the parties clearly need the therapy.

The Court encouraged the parties to submit their own Requests for Relief in the event the Court found Michael to be in contempt. Tracie, through counsel, suggests her visitation should begin very quickly, that it apparently begin regardless of whether any therapy has transpired, that additional visitation be ordered beyond what the parties had agreed to, that overnight visitation begin after 30 days of the visits starting back up, and that transportation be handled by Tracie's coworker. And that all of this be supported by a 30-day purgeable jail sentence. The Court understands why this is what Tracie would want, given how this case has progressed, but there is no way the Court could find that this was in the best interests of H.D.P. While the Court is not convinced Michael has done enough to promote visitation, the Court acknowledges that H.D.P. clearly has real and significant issues with her mother that need to be addressed. And her best interests must be taken into account even when determining the appropriate punishment for Michael. Ordering immediate visitation without ensuring the counseling or therapy the parties

11

E-FILED   CDDM018646 - 2025 NOV 02 11:54 AM   JOHNSON
CLERK OF DISTRICT COURT
Page 12 of 15

previously agreed to is in place could well prove detrimental to H.D.P. Moreover, relying on Tracie's coworker or friend, who appears to be little more than a stranger to H.D.P., for transportation does not seem a viable option. Michael on the other hand, again through counsel, suggests he be ordered to do little more than what he was already supposed to have done.

The Court finds that something of a combination of the two proposals is what is most appropriate under the circumstances. Michael will be sentenced to a 30-day jail sentence but be given an opportunity to purge it over the next year. In fact, the Court honestly hopes (for H.D.P.'s sake) that Michael does not end up having to serve any time in jail, being unconvinced it will really help matters. The purge conditions will mirror progress being made on the parties' Stipulation, for following this agreement is what is truly in H.D.P.'s best interests. Michael will also be ordered to pay Tracie's attorney fees related to the contempt proceedings, but those proceedings only.

## RULING

IT IS THEREFORE ORDERED that Michael is found to be in contempt of court. As punishment for his contempt, he is ordered to serve 30 days in the Johnson County Jail. He may purge this jail sentence as follows:

1. Michael may purge one day of his contempt sentence (up to 15) for each therapy or counseling appointment H.D.P. attends with Emma Andeway (or whatever replacement therapist Mr. Hahn arranges) after the filing of this Ruling. If H.D.P. attends all recommended therapy or counseling appointments with Emma Andeway (or a replacement therapist) scheduled for the entire year following the filing of this Ruling, allowing for reasonable cancellations related to legitimate illness or the like, but the number of appointments was less than 15, he shall be deemed to have purged 15 days from his jail sentence. If, however, H.D.P. attends no therapy

12

E-FILED  CDDM018646 - 2025 NOV 02 11:54 AM  JOHNSON
CLERK OF DISTRICT COURT
Page 13 of 15

or counseling sessions within 30 days of the filing of this Ruling, Michael shall then immediately serve 15 days of the 30-day contempt sentence.

2.      Pursuant to the parties' Stipulation, Tracie's visitation shall begin after the parties have commenced Family Therapy. While the parties are still ordered to "remain cognizant of the recommendations of the family therapist in H.D.P.'s best interests", Tracie's agreed-upon visitation is not contingent on any specific approval by the therapist. Accordingly, Michael's attorney will provide Ms. Andeway (or the replacement therapist) with a copy of this Ruling. While the Court is not modifying this portion of the parties' Stipulation, Tracie is encouraged to *seriously consider and take to heart* any recommendation by the therapist to slow down or modify the agreed-upon visitation schedule. Therapy and building trust are almost certainly the most effective way, if not the only way, to repair the relationship between H.D.P. and Tracie. Once visitation begins, Michael may purge one day of his contempt sentence (up to ten) for each visit H.D.P. participates in as contemplated by the Stipulation or as otherwise agreed to by the parties.

3.      To facilitate Michael's ability to comply with this Ruling, and notwithstanding any provisions to the contrary in the parties' Stipulation, Michael shall be permitted to participate in H.D.P.'s calls with Tracie if he determines it will help encourage better and/or more appropriate participation by H.D.P. Additionally, Michael may determine the manner of transporting H.D.P. to and from her visitations with Tracie and alter the exchange location if he determines doing either will better promote H.D.P.'s participating in the visitation.

4.      Michael may purge the remaining five days of his contempt sentence by complying with the parties' Stipulation for the 90 days following the date Tracie begins her Friday through Sunday weekend visitation as set forth in paragraph 3(C)(V) of their Stipulation.

13

E-FILED   CDDM018646 - 2025 NOV 02 11:54 AM   JOHNSON
CLERK OF DISTRICT COURT

IT IS FURTHER ORDERED that any request to order mittimus related to or to interpret or modify the terms of this Ruling shall be filed to the attention of the undersigned.

IT IS FURTHER ORDERED that as additional punishment for Michael's contempt, he shall pay all court costs related to this proceeding and Tracie's reasonable and necessary attorney's fees related to this contempt matter. Within 20 days of the filing of this Ruling, Tracie's attorney shall file an updated attorney fee affidavit identifying only time spent on this contempt matter. Within ten days of the filing, Michael may file an objection to the same, if any. Any such objection will be reviewed by the undersigned, and a hearing will be scheduled if necessary. The Court suspects there may be reasonable differences of opinion on what attorney fees will be reimbursable but reserves the possibility of ordering additional fees in the event a hearing is necessary.

Clerk to notify.

E-FILED   CDDM018646 - 2025 NOV 02 11:54 AM   JOHNSON
CLERK OF DISTRICT COURT
Page 15 of 15



State of Iowa Courts

**Case Number**      **Case Title**
CDDM018646           MICHAEL J. PRIER AC TRACIE D. PRIER
**Type:**            Order of Disposition

So Ordered

Andrew Chappell, District Court Judge
Sixth Judicial District of Iowa

Electronically signed on 2025-11-02 11:54:44